# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 15, 2012 Session

## SAPINDER SINGH v. LARRY FOWLER TRUCKING, INC.

**Direct Appeal from the Circuit Court for Henderson County**
**No. 09085      Roger A. Page, Judge**

---

**No. W2011-01986-COA-R3-CV - Filed August 29, 2012**

---

This case arises from an accident involving two semi-trucks. The truck owned by Appellee trucking company rear-ended the truck driven by Appellant, causing injury to Appellant's back. Litigation ensued and the Appellee filed a motion *in limine* to exclude portions of Appellant's medical expert's testimony concerning Appellant's possible future need for surgery and the costs thereof. The trial court granted the motion, and Appellant appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Charles H. Barnett, III and Sarah E. Barnett, Jackson, Tennessee, for the appellant, Sapinder Singh.

Nicholas E. Bragorgos and Pam Warnock Blair, Memphis, Tennessee, for the appellee, Larry Fowler Trucking, Inc.

## OPINION

Appellant Sapinder Singh is a resident of Stockton, California. At the time of the accident at issue in this case, he was employed as a long-haul truck driver for Trans-Guru Trucking Company. Mr. Singh's route was from California to Virginia, with three "runs" per month.

On September 11, 2005, Mr. Singh was operating his truck in Henderson County, Tennessee, traveling on Interstate 40 in the east-bound lane. At the same time, Jeffrey Williams was driving a truck directly behind Mr. Singh. Mr. Williams' truck was owned by

Appellee Larry Fowler Trucking, Inc., where Mr. Williams was employed. Mr. Singh was traveling at approximately 70 mph when he noticed that traffic in his lane had come to a stop. Accordingly, he applied his brakes and turned on his emergency flashers. Mr. Williams did not notice the brake lights on Mr. Singh's trailer and was unable to stop, resulting in a collision.

Mr. Singh did not initially realize any injury from the accident and was able to continue his route toward Virginia. However, while driving, he began to experience pain, which allegedly got more severe as time passed. It was not until he returned to California that he sought medical attention.

Mr. Singh first sought treatment with Dr. Michael Arishin, a chiropractor. After forty-two visits, his pain was not getting better and Dr. Arishin referred Mr. Singh to Dr. Michael Jaffin, a board certified orthopedic surgeon. Dr. Jaffin first saw Mr. Singh on January 31, 2006. An MRI revealed several disc issues in Mr. Singh's back. Dr. Jaffin opined that Mr. Singh could not work because his condition was worsening. Dr. Jaffin referred Mr. Singh to a neurosurgeon. Although, in his deposition, Dr. Jaffin states that this neurosurgeon recommended that Mr. Singh should have surgery, we note that the neurosurgeon who is not named in the record did not testify in this case. Regardless, because Mr. Singh did not have medical insurance, he was unable to have surgery. Mr. Singh is not able to work because of his injuries.

On June 8, 2009, Mr. Singh filed suit against Larry Fowler Trucking and Mr. Williams, alleging negligence.[1] On July 13, 2011, Larry Fowler Trucking filed two motions *in limine*. The first was to exclude portions of Dr. Arishin's deposition testimony. This motion was granted, but the exclusion of Dr. Arishin's testimony is not an issue in this appeal. The second motion *in limine*, which is the subject of this appeal, was to exclude portions of Dr. Michael Jaffin's deposition testimony, which was taken on June 3, 2011. Specifically, Larry Fowler Trucking argued:

> During his deposition, Dr. Jaffin was asked questions regarding a possible future surgery for Mr. Singh. During his testimony, Dr. Jaffin was unable to testify with any degree of certainty as to what type of surgery Mr. Singh would need, and the cost of that surgery . . . . Dr. Jaffin's testimony demonstrated that he was not familiar with the type of surgery . . . Mr. Singh may

---

[1] In the Final Judgment entered in this case, all claims against Mr. Williams were dismissed with prejudice upon the court's finding that Mr. Williams "was never served with this lawsuit." No appeal is taken from this decision.

need, nor was he familiar with what the charges would be . . . . [Larry Fowler Trucking] would ask the Court to exclude from evidence all testimony contained in Dr. Jaffin's deposition regarding surgery. Dr. Jaffin testified throughout the deposition as to the possibility of future surgery, however, Dr. Jaffin's ultimate opinion was that he did not know what type of surgery [Mr. Singh] would need nor did he know what the costs would be . . . .

Dr. Jaffin testifies that he is "moderately" familiar with such charges, and therefore [Larry Fowler Trucking] submits he is not qualified to testify as to whether or not the charges are in fact reasonable or necessary with other medical providers in the community . . . . Dr. Jaffin's testimony is not based upon any degree of certainty or familiarity [with] charges . . . .

The trial court granted the motion *in limine* in part after a telephone conference. However, the court did not enter an order until December 16, 2011. The order on the admissibility of Dr. Jaffin's testimony states, in pertinent part:

The Court is of the opinion that the motion in limine . . . should be granted with respect to Dr. Jaffin's proposed testimony as to the need for future surgery and/or cost of same. The Court finds that Dr. Jaffin's testimony is not competent with regard to any possible surgery, and therefore Dr. Jaffin should not be allowed to give any testimony by way of deposition as to any possible surgery that [Mr. Singh] might need or the cost of same.

Dr. Jaffin's testimony was otherwise allowed.

The matter proceeded to jury trial on July 19 and 20, 2011. The Appellee admitted liability and the sole issue for the jury was the amount of damages. The jury returned a verdict in favor of Mr. Singh against Larry Fowler Trucking for $50,000. On August 17, 2011, the court entered an order on the jury verdict. Mr. Singh appealed this order. Upon review of the record, this Court determined that the August 17, 2011 order was not final, as it did not adjudicate all claims. Upon remand and upon Mr. Singh's motion, on December 16, 2011, the court entered "Final Judgment," awarding Mr. Singh $50,000 plus $6,810.71 in discretionary costs. On December 21, 2011, Mr. Singh filed a motion for new trial, which specifically sets out the issue of whether the trial court erred in excluding portions of Dr. Jaffin's deposition testimony. *See* Tenn. R. App. P. 3(e) (requiring a motion for new trial to

preserve certain issues pertaining to trial "in all cases tried by a jury"). The motion was denied by order of March 12, 2012.  Mr. Singh appeals.[2]

The sole issue for review is whether the trial court erred in granting, in part, the motion *in limine*, excluding portions of Dr. Jaffin's deposition testimony.

We review a trial court's decision regarding the admissibility of evidence, including a ruling on a motion *in limine*, under an abuse of discretion standard. ***Pullum v. Robinette***, 174 S.W.3d 124, 137 (Tenn. Ct. App. 2004) (citing ***Heath v. Memphis Radiological Prof'l Corp.***, 79 S.W.3d 550, 558–59 (Tenn. Ct. App. 2002)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011) (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn.2011)); ***Henderson v. SAIA, Inc***., 318 S.W.3d 328, 335 (Tenn. 2010)).  In other words, although rulings on motions *in limine* are within the discretion of the trial court, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." ***State v. Lewis***, 235 S.W.3d 136, 141 (Tenn.2007) (quoting Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App.  Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted)). We are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." ***Caldwell v. Hill***, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

In its order granting the motion *in limine*, the trial court specifically excluded three portions of Dr. Jaffin's deposition testimony:

> Q.  Now, Dr. Jaffin, at the present time what is Mr. Singh's prognosis if he does not have surgery?
>
> A.  Statistically he will get weaker and have trouble walking.
>
> Q.  You say statistically?
>
> A.  Yeah, most likely he is already developing right lower extremity weakness which was not present on initial exam and one would expect that to progress.

---

[2] We note that the attorneys who are representing Mr. Singh in this appeal did not represent him at the trial level.

Q. And without looking into the future with certainty what would you foresee or predict the benefit from surgery might be if he were able to afford it and have it soon?

A. Absence of pain and ability to walk.

Q. And ability to walk would include ability to sit and stand?

A. Yes, sir.

Q. And perhaps work as a driver?

A. Yes, sir.

The trial court also excluded the following:

Q. And once more for the sake of summary what is your prognosis for him if he does not receive surgery and then your prognosis if he did have surgery?

A. Well, this again, you know, reasonable medical probability and good luck because I've seen excellent spine surgeries have bad results, but without surgery I would anticipate that he would get weaker and have more difficulty ambulating and have more pain. With surgery hopefully he would have less pain, substantially less pain and a restoration of his function.

Q. And then one thing more, I believe you testified earlier that there would be a payment out of pocket that was inquired into some years again, I believe you said roughly $360,000.00?

A. No, that's what I paid. That's what my bill was.

Q. Okay. What would be an approximate cost for the type of surgery Mr. Singh is looking at today?

A. I can't tell for sure.

Q. Would it be at least $300,000?

A. That I can't tell either, sir. I would estimate what he would have—you see he has a disc in his thoracic spine and two in his lumbar spine and what that surgery may entail I can't tell you because I'm not a spine surgeon. And what it would cost I can't tell you because I can't tell you what the surgery would entail.

Q. Would it be the case that some decisions would have to be made after the surgery had begun that couldn't be foreseen?

A. No, but it would be the case that once the surgery—once the type of surgery is chosen then an approximate cost could be, you know, determined, but since I don't pretend to tell you what kind of surgery would be done I can't tell you what kind of cost it would be. I would estimate it would be well over $200,000.00, that I'm sure.

Q. In any event?

A. In any event, yes.

The court also excluded the following testimony:

Q. In regard to the aftermath of cross-examination and the scrutiny of your opinions from direct examination is it still your testimony that Mr. Singh needs surgery?

A. I think he needs surgical evaluation. Whether he needs surgery or what kind of surgery he needs I would leave that to a spine surgeon.

Q. Is it your testimony that any type of surgery that you might contemplate him having would cost at least $200,000?

A. Probably yes.

## No Offer of Proof

In its brief, Larry Fowler Trucking first argues that, because Mr. Singh failed to make an offer of proof concerning the excluded testimony, he has waived the issue on appeal. Tennessee Rule of Evidence 103(a)(2) provides:

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\*                                        \*                                        \*

(2) **Offer of Proof.** In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

In ***Thompson v. City of LaVergne***, No. M2003–02924–COA–R3–C, 2005 WL 3076887 (Tenn. Ct. App. Nov.16, 2005), *perm. app. denied* (Tenn. April 24, 2006), this Court stated:

An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. ***Pankow v. Mitchell***, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987). Reviewing courts cannot make this determination without knowing what the excluded evidence would have been. ***Stacker v. Louisville & N. R.R. Co.***, 106 Tenn. 450, 452, 61 S.W. 766 ([Tenn.] 1901); ***Davis v. Hall***, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995); ***State v. Pendergrass***, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989). Accordingly, the party challenging the exclusion of evidence must make an offer of proof to enable the reviewing court to determine whether the trial court's exclusion of proffered evidence was reversible error. Tenn. R. Evid. 103(a)(2); ***State v. Goad***, 707 S.W.2d 846, 853 (Tenn. 1986); ***Harwell v. Walton***, 820 S.W.2d 116, 118 (Tenn. Ct. App. 1991). Appellate courts will not consider issues relating to the exclusion of evidence when this tender of proof has not been made. ***Dickey v. McCord***, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001); ***Rutherford v. Rutherford***, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); ***Shepherd v. Perkins Builders***, 968 S.W.2d 832, 833-34 (Tenn. Ct. App. 1997).

[A]n offer of proof must contain the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence. Tenn. R. Evid. 103(a)(2). These

requirements may be satisfied by presenting the actual testimony, by stipulating to the content of the excluded evidence, or by presenting an oral or written summary of the excluded evidence. Neil P. Cohen, et al. <u>Tennessee Law of Evidence</u> § 103.4, at 20 (3d ed. 1995).

*Thompson*, 2005 WL 3076887, at *9.

This Court has also recognized that, in certain circumstances, an offer of proof is not necessary. "However, an offer of proof is not needed when the substance of the evidence and its reason for exclusion are apparent from the context." *Gillum v. McDonald*, No. M2003-00265-COA-R3-CV, 2004 WL 1950730, at *5 (Tenn. Ct. App. Sept. 2, 2004). In *Gillum*, this Court recognized two exceptions to the Tennessee Rule of Civil Procedure 103(a)(2) offer of proof requirement: (1) when the substance of the evidence and the specific evidentiary basis supporting admission is apparent from the context of the question; and (2) when the exclusion of the evidence seriously affects the fairness of the trial. *Id*.

In this case, we are concerned with the exclusion of certain portions of the deposition testimony of Dr. Jaffin. The appellate record contains the evidentiary deposition in its entirety. Although we concede that Mr. Singh did not make a separate offer of proof, because the appellate record contains Dr. Jaffin's full deposition, the motion *in limine*, and the trial court's order on the motion, there is sufficient evidence in the record from which to determine the trial court's reasoning and whether it was erroneous. The purpose of Rule 103(a)(2) is to help this Court determine whether the trial court's exclusion was reversible error. Here, the substance of the evidence and the specific evidentiary basis supporting admission or exclusion are apparent from the context. Accordingly, Mr. Singh's failure to make a separate offer of proof is not fatal to his appeal.

## Dr. Jaffin's Qualification to Testify as to Future Surgeries and Costs

Tennessee Rules of Evidence 702 and 703 govern a trial court's decision concerning the admissibility of expert testimony.[3] These evidentiary rules require a trial court to

---

[3] Tennessee Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

(continued...)

determine: (1) whether expert testimony will substantially assist the trier of fact in determining a fact in issue; and (2) whether the facts and data underlying the testimony indicate a lack of trustworthiness. Tenn. R. Evid. 702; Tenn. R. Evid. 703. As noted above, determinations concerning the admissibility, qualifications, relevance, and competency of expert testimony is left to the sound discretion of the trial court. *See **McDaniel v. CSX Transp., Inc.***, 955 S.W.2d 257, 263 (Tenn. 1997). Accordingly, our function is only to determine whether the trial court abused its discretion in excluding the testimony and not to substitute our view for that of the trial court. ***Id***. at 263–64.

As discussed by this Court, in ***Henley v. Amacher***, No. M1999-02799-COA-R3-CV, 2002 WL 100402 (Tenn. Ct. App. Jan. 28, 2002), in Tennessee:

> A person who is injured by another's negligence may recover damages from the other person for all past, present, and prospective harm. Included in the prospective harm for which damages may be recovered is the reasonable cost of the medical services that will probably be incurred because of the lingering effects of the injuries caused by the negligent person. To remove awards for future medical expenses from the realm of speculation, persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-or-fact to reasonably estimate the cost of the expected treatment.
>
> The first component of a claim for future medical expenses is, in the language of the Tennessee Pattern Jury

---

[3](...continued)
Tennessee Rule of Evidence 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Instructions, evidence that additional medical treatment is "reasonably certain to be required in the future." This "reasonable certainty" standard requires more than a mere likelihood or possibility. It requires the plaintiff to establish with some degree of certainty that he or she will undergo future medical treatment for the injuries caused by the defendant's negligence. It does not, however, require proof of future medical treatment to an absolute or metaphysical certainty. Rather, the "reasonable certainty" standard requires the plaintiff to prove that he or she will, more probably than not, need these medical services in the future.

*Id*. at \*13-\*14 (internal citations and footnotes omitted). Thus, in order to be helpful to a jury, Dr. Jaffin's testimony concerning possible future surgeries must be made with a reasonable degree of medical certainty. In the first instance, we note that the deposing attorneys did not ask Dr. Jaffin whether his testimony was given to a reasonable degree of medical certainty. While we have held that "the use of the 'magic language' that the opinion is to a reasonable degree of medical certainty is not necessary for admissibility," ***Mitchell v. Ensor***, No. W2001-01683-COA-R3CV, 2002 WL 31730908, at \* 11 (Tenn. Ct. App. Nov. 18, 2002), "the testimony must show, as a whole, that it is more probable than not" that future surgery will be required. ***Jackson v. Allen***, No. M2000-01673-COA-R3-CV, 2002 WL 661930, at \*2(Tenn. Ct. App. April 23, 2002). Although D. Jaffin was not specifically asked about the degree of certainty, as set out in full context above, it is clear, from the excluded portions of Dr. Jaffin's testimony, that he was unable to provide any level of certainty as to Mr. Singh's need for future medical intervention. After fully considering Dr. Jaffin's deposition, the trial court found that his testimony as to the need for future surgeries and the costs thereof was speculative, and concluded that the testimony was inadmissible. The trial court supported its conclusion with written findings. This Court has previously held that "expert testimony that a trial court determines is speculative would not 'substantially assist' the trier of fact." ***Gobee v. Dimick***, 213 S.W.3d 865, 881 (Tenn. Ct. App. 2006) (citation omitted); ***McDaniel***, 955 S.W.2d at 265 ("The trial court must be assured that the expert opinion testimony is based upon relevant scientific data, methods, and processes and not upon the "mere speculation" of the expert.").

In those portions of his testimony that were excluded from evidence, Dr. Jaffin testified that he would not "pretend to tell you what kind of surgery" Mr. Singh would require in the future, and that he could not "tell for sure" what these surgeries would cost. In fact, Dr. Jaffin testified that Mr. Singh would need further surgical evaluation, which he "would leave [] to a spine surgeon." By his own admission, Dr. Jaffin is not at all certain as to what, if any, future surgeries will be medically necessary. Consequently, he is not qualified

-10-

to testify as to what, if any, spinal surgeries Mr. Singh will need. As he testifies: "I can't tell you because I'm not a spine surgeon." As such, Dr. Jaffin's testimony does not demonstrate a reasonable medical certainty concerning the need for future surgeries.

Concerning the costs of future surgeries, Dr. Jaffin testified that the costs would "be at least $300,000." Later in his testimony, he opines that the costs would be "well over $200,000." This testimony is also speculative. As noted above, Dr. Jaffin, by his own testimony, is not qualified to opine as to the specific surgeries that may be necessary and, because he is not qualified concerning the surgeries, he is likewise not qualified to testify as to the costs of the surgeries. We have reviewed Dr. Jaffin's evidentiary deposition in its entirety. From his statements, we cannot conclude that the trial court abused its discretion in finding that Dr. Jaffin's testimony as to future surgeries and costs was speculative and of no value to assist the trier of fact.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against the Appellant, Sapinder Singh, and his surety.

_____
J. STEVEN STAFFORD, JUDGE

-11-