IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2016 Session

IN RE ESTATE OF ELWOOD R. DARKEN

**Appeal from the Chancery Court for Williamson County**
**No. P5663      James G. Martin, III, Chancellor**

_____

**No. M2016-00711-COA-R3-CV – Filed December 20, 2016**

_____

The sons of the decedent challenge the executrix's administration of the decedent's estate, contending that she breached her fiduciary duty by, *inter alia*, refusing to provide them with certain documents and by converting personal property they claim their father intended for them. They also claim that the antenuptial agreement their father entered into with the executrix prior to their marriage established a trust that nullifies the specific bequest in their father's will that gives his tangible personal property to the executrix. The executrix denied breaching any of her duties or converting any assets. She also disputed the contention that the antenuptial agreement created a trust. The trial court found that the executrix had not breached her fiduciary duties or converted any assets and that the antenuptial agreement did not create a trust. The court also ordered that the estate pay the fees of the attorney who represented the executrix in her fiduciary capacity. The decedent's sons appeal, challenging each of the foregoing rulings. They also contend that the trial court erred in limiting their cross examination of the executrix at trial. We affirm in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the appellants, Eric Darken and Brett Darken, Trustees of The Elwood R. Darken Trust and The Nancy L. Darken Trust.

Paul T. Nowak, Franklin, Tennessee, for the appellee, Cherry Lane Darken.

**OPINION**

The matters at issue arise from the administration of the estate of Elwood R. Darken. The parties to this action are Eric Darken and Brett Darken ("Plaintiffs") and

Cherry Lane Darken ("Defendant"). Plaintiffs are the adult sons of Elwood Darken, the decedent, and Nancy L. Darken, who died in 1997. Defendant, who is the decedent's surviving spouse, served as the executrix of his estate and is the beneficiary of a specific bequest. The residuary beneficiary of the decedent's estate is the Elwood R. Darken Living Trust. Plaintiffs are the successor trustees and sole beneficiaries of that trust.

In 1992, during his marriage to Nancy, Mr. Darken executed a will that appointed his then-wife "Nancy L. Darken" as the executor of his estate. The will states in pertinent part:

> I give and bequeath to my wife, if she shall survive me, all the tangible personal effects including any household furniture and furnishings, automobiles, books pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament (excluding cash, choses in action, stocks, bonds or other incorporeal personal property), which I may own at the time of my death . . . .

In 1999, Mr. Darken married Defendant. Prior to the marriage they executed an antenuptial agreement, the validity of which is not challenged. The agreement stated that Mr. Darken would keep sole ownership and control of the assets listed in "Exhibit A", a collection of documents that included a schedule of assets titled "Specific items designated to Brett Darken and Eric Darken on equal basis" ("Items Schedule"). The Items Schedule listed 27 items of personal property, including "41 one ounce gold Eagle coins." Section 9 of the antenuptial agreement states that "this Agreement shall not be construed as placing any limitation on the rights of either party to make voluntary inter vivos and/or testamentary transfers of his or her assets to his or her spouse."

In 2004, Mr. Darken executed a codicil that removed references to Nancy Darken from his will and replaced them with references to Defendant. In relevant part, the codicil states: "In all respects, my said Last Will and Testament is hereby modified such that any references therein to 'my wife' or to 'NANCY L. DARKEN' including, but not limited, to any inheritance thereunder or any fiduciary appointment, shall henceforth be modified to mean **Cherry Lane Darken**." (emphasis in original). Attorney Randle Davis, who served as Mr. Darken's personal attorney for years, prepared the 1992 will and the 2004 codicil.

Mr. Darken died on April 6, 2010. By order entered on May 20, 2010, his 1992 will and the 2004 codicil were admitted to probate, and Defendant was issued letters testamentary as the executrix. Mr. Davis, who drafted and filed the 2010 petition to open the probate estate, has represented Defendant in her capacity as the executrix throughout these proceedings.

Shortly after their father's death, Plaintiffs began requesting documents from Defendant including the antenuptial agreement, all schedules associated with the antenuptial agreement, and documents concerning various family trusts that Mr. Darken had managed. In June and July of 2010, Mr. Davis sent three memoranda to Plaintiffs and Defendant. The first of these documents is a "flow chart" of Mr. Darken's assets based on the information that was available at that time. It states that Mr. Darken was a private person who used Mr. Davis as a resource to answer specific questions. According to this memo, "[o]ther than [Mr. Darken] himself, there is not one person who knows [his] overall plan." Mr. Davis concluded the June 2010 memo by suggesting that the parties have a meeting soon.

This meeting never occurred. In an email exchange between Plaintiffs and Mr. Davis on July 13, 2010, Brett Darken stated that: "In order to have an informed conversation, we all need to be working from the same set of facts. Once we get this documentation, we can then set a time and agenda for the meeting." Mr. Davis sent a follow-up memo on July 16, 2010, again seeking to organize a meeting between Plaintiffs and Defendant. On July 21, 2010, Mr. Davis sent another memo that included additional charts of Mr. Darken's assets.

During that same month, Defendant gave Plaintiffs a handwritten list of the assets of the trusts Mr. Darken had managed. This list included account numbers, account balances, and contact information for the various financial institutions that controlled the listed assets.

Nevertheless, Plaintiffs continued to request additional documentation. In 2011, Defendant provided Plaintiffs with a copy of the antenuptial agreement that did not include any of the exhibits to the agreement. Additionally, Mr. Davis, with the consent of Defendant, made his entire estate file available to Plaintiffs' counsel, who reviewed the file and was permitted to make copies of it.[1]

On August 15, 2012, Defendant filed a motion for executor fees and attorney fees, and she submitted her final accounting to the court on September 11, 2012. One week later, Plaintiffs timely filed an Objection to Application for Fees. Following a hearing on September 28, 2012, the Clerk and Master awarded Randle Davis over $33,000 in attorney's fees and expenses for services in connection with the administration of the estate through August 14, 2012. The Clerk and Master also recommended that the trial

---

[1] Plaintiffs have had a succession of counsel in this matter. They first hired attorneys Paul Hayes and Paul Gontarek to represent them, and it was Mr. Hayes who reviewed Mr. Davis' estate file in 2011. After they were discharged, Plaintiffs hired attorney John Hicks who made his first appearance on February 21, 2012. Several months later, Mr. Hicks filed a motion to withdraw, which was granted. Thereafter, Plaintiffs retained attorney Michael Richardson, who represented Plaintiffs in the trial court proceedings and continues to represent them in this appeal.

court approve the final accounting, following which Plaintiffs filed an exception to the final accounting.

On December 27, 2012, Plaintiffs filed a Motion to Remove Executrix, Appoint Successor Co-Executors and Require Return of Certain Assets. On January 28, 2013, the Clerk and Master entered an Order finding that the duties of the executrix were completed but noting that the estate could not be closed pending resolution of Defendant's Motion for Executor Fees and Plaintiffs' Exceptions to Final Accounting and Motion to Remove Executrix. The Clerk and Master directed Defendant to retain counsel to represent her in an individual capacity because Mr. Davis could only represent her in her capacity as the executrix of the estate.[2] The order reserved ruling on all other pending motions and claims. Subsequently, Plaintiffs filed a motion to remove Mr. Davis as the attorney for the estate.

On July 1, 2013, the trial court held a hearing on the pending motions and the recommendations of the Clerk and Master. In the order that followed, the trial court instructed Plaintiffs to file an amended complaint setting forth all civil claims against Defendant; ordered the depositions of Defendant and Mr. Davis; and reserved ruling on all other motions. In a separate order, the trial court denied the motion to remove the executrix and to disqualify and remove Mr. Davis as attorney for the estate.

On July 18, 2013, Defendant filed a motion for court approval of Mr. Davis' final attorney's fees, requesting over $37,000 in supplemental fees for the period from August 15, 2012 through August 7, 2013.

On July 23, 2013, Plaintiffs filed their amended complaint alleging, *inter alia*, breach of fiduciary duty, breach of contract, conversion of trust assets, and attempted conversion of estate assets. Plaintiffs alleged that Defendant refused to disclose trust documents and the antenuptial agreement. Plaintiffs also contended that the personal property identified in the Items Schedule, including the gold coins, was property of an express trust created in the antenuptial agreement of which they were the sole beneficiaries.

In an order entered on August 26, 2013, the court found that the executrix had completed her duties of administration and relieved her from all further duties except for the liability, if any, for her actions as executrix. The remaining motions for fees, objections to the final accounting regarding personal property and issues related to the antenuptial agreement were reserved.

---

[2] Defendant retained attorney Yost Nowak to represent her concerning claims asserted against her in her individual capacity. Mr. Nowak represented Defendant throughout the trial court proceedings and continues to represent her in this appeal.

The case was tried on July 2 and 3, 2014. Mr. Davis testified that he made his legal files regarding Mr. Darken available to Plaintiffs' first attorney, Paul Hayes. Mr. Hayes was allowed to review the file and choose which documents he wanted to copy. According to Mr. Davis, Mr. Hayes "tagged a little over 100 pages," and Mr. Davis made copies of them. Mr. Davis did not review the pages Mr. Hayes marked. Instead, he gave them to his administrative assistant so that they could be copied.

Mr. Davis also testified that Mr. Darken was "very private when it came to financial information and data." Mr. Darken provided Mr. Davis with limited information and asked questions about specific issues based on that information. According to Mr. Davis, "no one individual had all of the information" about Mr. Darken's finances and assets.

Eric Darken testified that he used the handwritten list of trust assets to contact many of the financial institutions. He stated that Plaintiffs did not ask these institutions for backup copies of the trust documents because they "wanted to get the originals from [Defendant]." Similarly, Brett Darken testified that Plaintiffs were able to transfer or obtain control of "60 to 80 percent of the trust stuff . . . " within six months of receiving the handwritten list of assets. When asked what trust documents Plaintiffs needed but were not provided, Brett stated: "What did I need that I wasn't provided -- oh, nothing."

After the close of Plaintiffs' proof, Defendant moved for involuntary dismissal under Tenn. R. Civ. P. 41.02(2). The trial court granted the motion regarding the claim for breach of fiduciary duty because Plaintiffs had not submitted competent proof of damages. The trial court stated that trial would continue regarding the other issues. When Defendant elected to rest her case without presenting additional evidence, the trial court called Defendant as a witness for the purpose of examining her concerning the circumstances regarding the execution of the antenuptial agreement. Prior to calling Defendant as a witness, the trial court gave each party the opportunity to object to its decision to call Defendant, and both parties stated that they had no objection.

The trial court questioned Defendant about the antenuptial agreement and the property listed on the Items Schedule. Defendant testified that she and Mr. Darken "mutually agreed to end the prenuptial agreement" after five years of marriage. According to Defendant, she did not have a copy of the agreement because she and Mr. Darken had destroyed their copies.

On August 21, 2014, the trial court entered an order reiterating its decision to grant Defendant's motion for involuntary dismissal and making other findings about the merits

of the case.[3] Plaintiffs filed a motion to alter or amend, which the court granted because it had signed the August 2014 order without allowing Plaintiffs to file a competing order and because it had not allowed the parties to cross-examine Defendant. Subsequently, the parties entered an agreed order stating that Defendant would be recalled to the witness stand for cross-examination "limited to the scope of the direct examination by the Court at trial."

In January 2015, the court recalled Defendant to the stand and allowed both parties' attorneys to examine her. As provided in the agreed order, the scope of the parties' cross-examination of Defendant was limited to the scope of the trial court's direct examination. Once again, Defendant testified that she did not have a copy of the antenuptial agreement and that after five years of marriage she and Mr. Darken "decided, mutually, to put aside all of this prenuptial agreement, to merge our properties." According to Defendant, executing the 2004 codicil was an easy way to merge Mr. Darken's property with hers.

In March 2016, the court entered a final order in which it reaffirmed the findings in its previous orders and rejected the claims in the amended complaint. The court found that Defendant had not breached her fiduciary duty because the antenuptial agreement and trust documents were not property of the estate; thus, Defendant had no duty to provide them to Plaintiffs. Moreover, the trial court found that even if Defendant had such a duty, she did not have a copy of the antenuptial agreement or schedules to produce because Mr. Darken and she revoked the agreement in 2004 by destroying the documentation. Regarding the trust documents, the court found that Defendant's July 2010 handwritten statement was sufficient disclosure because Plaintiffs were able to use that statement to obtain control of the relevant trust assets and could have asked various financial institutions for the trust documents they sought.

The court also rejected Plaintiffs' argument that their damages for breach of fiduciary duty were the costs of this litigation. The court found that Plaintiffs received a copy of the antenuptial agreement in 2011 and another copy that included all exhibits in 2013. Moreover, the trial court found that "[a]ccess to the complete document had no deterrent effect on Plaintiffs' decision to continue incurring 'enormous time and expense' in proceeding to trial."

As for the claim that Defendant converted the coin collection and other personal property, the court found that the decedent made a testamentary gift of the property listed on the Items Schedule to Defendant. The court rejected Plaintiffs' argument that the

---

[3] Over the course of this litigation, the trial court issued several orders that made findings of fact and conclusions of law. We need not discuss these orders individually because the findings and conclusions in these orders are incorporated and restated in the trial court's March 2016 final order.

antenuptial agreement established an express trust concerning tangible personal property listed on the Items Schedule. The court noted that Section 9 of the antenuptial agreement allowed the decedent to make such testamentary gifts to her and that the decedent did just that when he executed the 2004 codicil, which altered his will by replacing every reference to Nancy with Defendant. As a result, Mr. Darken specifically bequeathed to Defendant "all tangible personal effects . . . (excluding cash, choses in action, stocks, bonds, or other incorporeal personal property)." Further, the court found that the definition of "all tangible personal effects" encompassed everything listed in the Items Schedule, including the gold coins, which "are not cash and are not legal tender." Thus, the property at issue was specifically bequeathed to Defendant pursuant to the 2004 codicil.

Finally, the trial court ordered the estate to pay the balance of the attorney's fees charged by Mr. Davis for representing Defendant in her capacity as executrix. However, the trial court denied Defendant's request for an additional $23,000 in attorney's fees that she incurred defending claims against her in an individual capacity.[4] This appeal followed.

## STANDARD OF REVIEW

In cases such as this where the action is "tried upon the facts without a jury," Tenn. R. Civ. P. 52.01 states that the trial court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The underlying rationale for the Rule 52.01 mandate is that it facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision," and enhances the authority of the trial court's decision. *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013)). In the absence of findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision." *Id.* (quoting *In re Christian G.*, No. W2013-02269-COA-R3-CV, 2014 WL 3896003, at *2 (Tenn. Ct. App. Aug. 11, 2014)).

In this case, we have the benefit of comprehensive and detailed findings of fact by the trial court that fully comply with the Rule 52.01 mandate.[5] We review a trial court's

---

[4] These fees were charged by Mr. Nowak for representing Defendant in her personal capacity.

[5] The trial court's final order contains numerous citations to the transcript of the evidence and to exhibits to identify where the evidence appears that supports its specific findings of fact. For example, the first three sentences of the trial court's findings of fact read as follows:

Mrs. Cherry Lane Darken and Mr. Elwood R. Darken married February 27, 1999. Trial Tr. vol II, 444:4-6. Before marriage, they negotiated and executed an antenuptial

(continued…)

factual findings de novo, accompanied by a presumption of the correctness of the finding of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *see Boarman v. Jaynes*, 109 S.W.3d 286, 290 (Tenn. 2003). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We will also give great weight to a trial court's factual findings that rest on determinations of credibility and weight of oral testimony. *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000).

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. *Blair v. Brownson*, 197 S.W.3d 681, 683-84 (Tenn. 2006). Accordingly, no presumption of correctness attaches to the trial court's conclusions of law and our review is de novo. *Id.*

## ANALYSIS

Plaintiffs present the following issues for our review. First, they contend the trial court erred by concluding that Defendant did not breach fiduciary duties owed to the estate and by finding that Plaintiffs did not sustain damages as a result of the breach of her fiduciary duties. Second, they contend the trial court erroneously held that the property on the Items Schedule belonged to Defendant. Third, they contend the court erred by denying Plaintiffs the opportunity to fully cross-examine Defendant. Fourth, they contend the court erred by ordering the estate to pay Defendant's legal fees.

### I. BREACH OF FIDUCIARY DUTY

Plaintiffs contend the trial court erred when it found that Defendant had not breached her fiduciary duties as the executrix of the estate.

The duties of an estate's personal representative include notifying the decedent's beneficiaries that the will has been filed for probate; collecting and inventorying the decedent's assets; resolving the claims submitted by the creditors of the decedent and the

---

agreement. Trial Tr. vol I, 232:21-233:17. Mrs. Darken engaged attorney Ed Yarbrough to represent her during the antenuptial negotiations, and Mr. Darken engaged Randle Davis. Trial Tr. vol II, 446:1-9.

For brevity, we will omit the trial court's citations to the record when we quote from the trial court's final order in this opinion. Nevertheless, we express our appreciation to the trial court for such citations and for the extensive findings of fact.

estate; managing the decedent's estate; making interim distributions of the estate when appropriate; and filing interim accountings. *See In re Estate of Trigg*, 368 S.W. 3d 483, 496-97 (Tenn. 2012); Tenn. Code Ann. § 30-2-301.

An executor also has the duty to communicate with the beneficiaries of the estate in a professional manner. *In re Estate of Ladd*, 247 S.W.3d 628, 637 (Tenn. Ct. App. 2007) (citing *Estate of Doyle v. Hunt*, 60 S.W.3d 838, 846 (Tenn. Ct. App. 2001)). Additionally, executors occupy a fiduciary position and, therefore, must deal with beneficiaries of the estate in utmost good faith. *Estate of Ladd*, 247 S.W.3d at 637 (quoting *McFarlin v. McFarlin*, 785 S.W.2d 367, 369-70 (Tenn. Ct. App. 1990)).

Courts are cautious not to hold executors and administrators liable upon slight grounds. *Estate of Ladd*, 247 S.W.3d at 637-38. Thus, executors who act reasonably and in good faith while carrying out their duties will not be held liable if their judgment turned out to be wrong in light of subsequent events. *See id.* at 638. Further, an executor's performance "should be measured in light of the circumstances existing at the time." *Estate of Doyle*, 60 S.W.3d at 845.

In their appellate brief, Plaintiffs contend that Defendant breached her fiduciary duty by (1) refusing to communicate with them; (2) refusing to give them the antenuptial agreement and all associated schedules; (3) concealing certain assets of the estate, specifically the gold coins; and (4) refusing to give them documents regarding trusts that Mr. Darken managed.

A. Communication

Plaintiffs contend that Defendant "refused to communicate with them, and that she refused to close and fully administer the estate unless and until they made financial concessions to her."

Although the record shows that Defendant did not want to communicate *directly* with Plaintiffs, she provided information to Mr. Davis, who communicated that information to Defendants. For example, following their father's death, Plaintiffs met with Mr. Davis, who informed them of their duties as trustees of the various Darken family trusts. Mr. Davis also wrote several memoranda that identified the various assets, trusts, amounts in the related accounts, and the individuals responsible for those assets. The first memorandum was sent in June 2010 and others were sent in July 2010. The June 2010 memorandum outlined what Mr. Davis knew about the decedent's financial affairs and the various trusts. Plaintiff herself handwrote a list of information about the trust assets, which was provided to Defendants in July 2010. In addition, Mr. Davis allowed Plaintiffs' counsel to examine the files related to Mr. Darken's estate and to copy any documents in those files. More importantly, and in direct contradiction of Plaintiffs'

contentions, Mr. Davis proposed a joint meeting to further discuss the estate, but Plaintiffs refused to meet until they received documentation.

Thus, the evidence demonstrates that Defendant fulfilled her duty to communicate with the beneficiaries of the estate.

### B. Providing the Antenuptial Agreement

Plaintiffs contend that Defendant breached her duty by failing to provide them with a complete, physical copy of the antenuptial agreement. In analyzing this claim, the trial court found as follows:

> Mrs. Darken had no obligation, statutory or otherwise, to provide a copy of the agreement to the Darken brothers. In fact, Mrs. Darken did not know a copy existed until presented with a copy at her deposition. Mrs. Darken believed that she and her husband destroyed the antenuptial agreement after making new wills.
>
> . . . .
>
> Plaintiffs characterize the antenuptial agreement as property of the Darken estate that the executrix had a duty to marshal and then turn over to the estate's beneficiaries in the course of administration. Yet, they provide no statutory support for this argument or point the Court to any persuasive jurisprudence justifying this position. While Plaintiffs assert that an antenuptial agreement often produces results that inure to the benefit of an estate, the Tennessee courts of appeal have not addressed this premise in the context of executory disclosure of the physical underlying agreement. *See Cantrell v. Estate of Cantrell*, 19 S.W.3d 842 (Tenn. Ct. App. 1999) (a clause in an antenuptial agreement benefited the estate by preventing spousal claims). Plaintiffs have not demonstrated that the antenuptial agreement was property of the estate or that Mrs. Darken has violated one of the enumerated statutory duties of executors in withholding it from the estate's beneficiaries even if Plaintiffs had proved that she could have provided it to them. . . .
>
> . . . .
>
> Starting in the summer of 2010, Brett and Eric Darken made repeated requests to Mrs. Darken for her to turn over the antenuptial agreement. At that time, however, Mrs. Darken no longer possessed a copy of the agreement. After approximately five years of marriage, Mrs. Darken and her husband mutually agreed to end the antenuptial agreement,

- 10 -

discarding or destroying their copies. Simultaneously, Mr. Darken executed a codicil to his will naming Mrs. Darken executrix of his estate and beneficiary of certain assets. Mrs. Darken did not see the antenuptial agreement again until Plaintiffs presented her with a copy at her deposition. Estate attorney Randle Davis, however, informed the brothers as early as July 13, 2010 that he possessed copies of the agreement. Mrs. Darken never instructed Mr. Davis to conceal any documents. Mr. Davis made the entirety of his files relating to the Darken Estate, including the antenuptial agreement, available for review by the brothers or their counsel, Mr. Hayes, upon request. Mr. Hayes, reviewed all of Mr. Davis' files and additional documents provided by Mrs. Darken with the authority to make a copy of any document. Mr. Hayes obtained a copy of the antenuptial agreement, albeit one without the attached schedule of assets. The Darken brothers ultimately received the complete agreement with the schedules attached in mid-2013.

The evidence fully supports the trial court's findings that Defendant was not responsible for failing to provide a copy of the agreement with attachments to Plaintiffs. The evidence clearly established that Defendant could not have provided Plaintiffs with a copy of the agreement because she and Mr. Darken had previously destroyed their copies and she had no knowledge that Mr. Davis had a copy. Moreover, Mr. Davis allowed Plaintiffs' attorney to examine the files relevant to Mr. Darken's estate and choose which documents to copy and there is no evidence that Defendant or Mr. Davis interfered with this process or concealed any documents from Plaintiffs' attorney.

For the foregoing reasons, Plaintiffs failed to establish that Defendant breached a duty by failing to provide a copy of the antenuptial agreement.

## C. Concealing Estate Assets

Plaintiffs claim that Defendant concealed certain assets of the estate from them. Plaintiffs' brief does not list all of the assets Plaintiffs claim were concealed, but it is clear that they are most concerned about the gold coins.

Plaintiffs contend that Defendant concealed the gold coins from them by refusing to give them a complete copy of the antenuptial agreement, by failing to list the gold coins as an asset in the final accounting of Mr. Darken's estate, and by failing to include the coins on the handwritten list of trust assets Defendant gave to Plaintiffs in July 2010. As previously discussed, Defendant did not conceal the antenuptial agreement from Plaintiffs and, with Defendant's approval, Mr. Davis made his files available to Plaintiffs' counsel.

As for failing to list the gold coins in the final accounting, that is not the office of an accounting. By statute, accountings must "state all receipts, disbursements and distributions of principal and income for the accounting period and the remaining assets held in the estate . . . ." Tenn. Code Ann. § 30-2-601(a)(2).[6] As distinguished from accountings, it is the inventory in which the personal representative is to provide a list of probate assets. Specifically, Tenn. Code Ann. § 30-2-301(a) requires the personal representative to make "a complete and accurate inventory of the probate estate" unless excused by the will. In this case, the requirement of making and filing an inventory was waived by Mr. Darken's will. Accordingly, Defendant was not required to file an inventory. *See id.* Therefore, Defendant did not breach a duty by not filing an inventory that included separate line-items of the estate's tangible personal property.

Similarly, not including the gold coins on her handwritten list of trust assets does not constitute a breach of duty nor does it establish that Defendant intended to conceal the coins from Plaintiffs. The list was created in response to Plaintiffs' request for contact information concerning accounts that were assets of the trusts Mr. Darken managed. Information about tangible personal property would not have been a relevant response to that request, so it is not surprising that the gold coins are not included in the handwritten list. Consequently, failure to include that information does not indicate that Defendant intended to conceal it from Plaintiffs.

## D. Trust Documents

Plaintiffs contend that Defendant breached her duty as an executrix by failing to provide them with information about the assets of various trusts that Mr. Darken managed. The relevant portion of the trial court's findings on this issue reads as follows:

> In July, 2010, Mr. Davis supplied the Darken brothers with two additional memoranda containing documentation of the estate's assets based exclusively on what information Mrs. Darken had provided to him. The same month, Mrs. Darken informed Bret [sic] and Eric of the assets relating to the Darken estate by way of a handwritten listing of accounts and assets. This listing contained account numbers and contact persons at the various financial institutions. Using this information, the brothers successfully transferred all accounts and assets belonging to the various trusts. The brothers relied solely on their requests made to Mrs. Darken, and did not request from the trust contacts any of the backup documents for the accounts. When questioned as to what the brothers needed to obtain control of the trust accounts that he was not provided, Brett Darken replied that he

---

[6] At the time Defendant filed the final accounting in September 2012, this requirement was contained in Tenn. Code Ann. § 30-2-601(a), not subsection (a)(2).

had received all he needed. Consequently, within approximately sixty days of opening the estate, the Darken brothers received all of the information needed by them to transfer the trusts' accounts, and, within six months, the brothers had obtained and transferred to their control the vast majority of the trusts' assets.

The evidence shows that Defendant provided Plaintiffs with a handwritten list of accounts in July 2010. This list contained account numbers and contact information for various financial institutions. As the trial court correctly found, Plaintiffs obtained the information they needed to obtain control of the trust assets within sixty days of the opening of Mr. Darken's estate. Indeed, Brett Darken admitted that Plaintiffs did not need any information other than the handwritten list provided by Defendant to obtain control of the trust assets. Furthermore, despite the fact that Plaintiffs used this information to contact various financial institutions, they never requested any backup documents from these institutions.

Additionally, Defendant could not have provided all of the information Plaintiffs demanded because she did not possess nor control access to such information and, in some cases, she did not know the documents or information existed. As the trial court found, even Mr. Darken's long-time attorney, Mr. Davis, did not have complete or current information regarding the trusts:

> At the time of his death, Mr. Darken oversaw and managed several trusts. These trusts included: (1) the Elwood Darken Trust, (2) the Nancy Darken marital trust and the Nancy Darken family trust, and (3) the Ellen Darken Trust. *Mr. Davis did not know the general essence of these trusts, and, to his knowledge, no one individual knew the full extent and scope of Mr. Darken's financial resources. A number of individuals had a little information, but no one individual knew everything. Of those who had information regarding Mr. Darken's assets, some of that knowledge was either outdated or incorrect.*

(Emphasis added).

Plaintiffs have not identified any evidence that preponderates against the trial court's findings. Therefore, the trial court correctly concluded that Defendant did not breach her duty by failing to disclose information about the trust assets.[7]

---

[7] In light of our determination that Defendant did not breach her fiduciary duty, we need not address Plaintiffs' argument that the trial court erred when it found they had not submitted competent evidence of damages for their breach of fiduciary duty claim.

## II. DISPOSITION OF THE PROPERTY ON THE ITEMS SCHEDULE

Plaintiffs contend that the trial court erred by concluding that Mr. Darken had given all his tangible personal property, including the property listed on the Items Schedule, to Defendant.

In construing documents, we will give words their ordinary and customary meaning rather than a strained or unnatural interpretation. *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) (citing *Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975)). When interpreting a will, the court's primary concern is to discover the intention of the testator "and give effect to it unless it contravenes some rule of law or public policy." *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005) (quoting *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983)). In so doing, we look to the entire will and any codicils. *See id.* The testator's intent is determined "from the particular words used in the will itself and not from what it is supposed the testator intended." *Id.* (internal citation omitted).

After reviewing the relevant documents, the trial court concluded that all of the property listed on the Items Schedule belonged to Defendant. We agree with this conclusion. Mr. Darken's will specifically bequeathed to his wife "all the tangible personal effects including any household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel, and other articles of household or personal use or ornament (excluding cash, choses in action, stocks, bonds or other incorporeal personal property). . . ." Under the 2004 codicil, the term "wife" in Mr. Darken's will referred to Defendant. Further, as the trial court correctly determined, the coin collection was an investment; it was not cash. Therefore, the coins were not excluded by the parenthetical phrase quoted above. Thus, based solely on the will and the 2004 codicil, Defendant inherited the gold coins and other items of personal property at issue pursuant to the specific bequest.

On appeal, Plaintiffs do not contest the trial court's interpretation of the will and codicil. Instead, they contend that Defendant cannot receive the property listed on the Items Schedule because the antenuptial agreement and Items Schedule, when read together, create an express trust. Alternatively, Plaintiffs contend that imposing a resulting trust or a constructive trust is appropriate. We find no merit to these contentions.

At a minimum, express trusts require "a grantor or settlor who *intends* to create a trust; a corpus (the subject property); a trustee; and a beneficiary." *Myers*, 891 S.W.2d at 218 (citing *Kopsombut-Myint Buddhist Ctr. v. State Bd. of Equalization*, 728 S.W.2d 327, 333 (Tenn. Ct. App. 1986)) (emphasis in original). "The trustee holds legal title and in that sense, owns the property, holding it for the benefit of the beneficiary who owns the equitable title." *Id.* Although the grantor may retain either of these interests, no one may

solely hold both because the purpose of separating the two would be defeated. *Id.* (citing *Miller v. Miller*, 304 S.W.2d 74 (Tenn. 1957)).

Like express trusts, resulting trusts are generally imposed in accordance with the parties' intentions. *See Burleson v. McCrary*, 753 S.W.2d 349, 352-53 (Tenn. 1988). When a court imposes a resulting trust, it presumes that the trust was intended by the parties from the nature and character of their interactions. *See Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992).

In contrast, constructive trusts are imposed without reference to the parties' intentions. *Burleson*, 753 S.W.2d at 353. Constructive trusts are imposed against

> one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.

*Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980).

Here, the Items Schedule does not indicate that Mr. Darken intended to create a trust. Although the title of the Items Schedule indicates that Mr. Darken intended to give the listed property to Plaintiffs at a later time, the antenuptial agreement itself indicates that Mr. Darken retained sole ownership of that property as well as the right to change his mind about how to dispose of it. The Items Schedule is part of Exhibit A, and the antenuptial agreement states that "each party shall keep and retain sole ownership and control of all assets, real or personal, now owned by such party, including the property listed in **Exhibit 'A'** for Mr. Darken . . . ." (emphasis in original). Furthermore, the antenuptial agreement expressly preserves Mr. Darken's right to alter the disposition of his property by making "voluntary inter vivos and/or testamentary transfers of his . . . assets to his . . . spouse" if his intent ever changed in the future. Thus, the language of the antenuptial agreement demonstrates that Mr. Darken did not intend to create a trust. Rather, he intended to retain both legal and equitable title to the property listed in the Items Schedule and to reserve the right to dispose of that property as he saw fit.

For similar reasons, the documents Plaintiffs rely on fail to establish a resulting trust. In order to impose a resulting trust, we would have to presume that Mr. Darken intended to create a trust based on the nature and character of the antenuptial agreement and Items Schedule. *See Intersparex*, 852 S.W.2d at 249. As previously discussed, these documents indicate that Mr. Darken intended to retain sole control over his property instead of placing it in a trust. We decline to presume that Mr. Darken's intentions were the opposite of the intentions expressed in the antenuptial agreement.

Moreover, Plaintiffs have failed to establish a constructive trust in this case because there is no evidence that Defendant acquired the property through fraud or other wrongful conduct. *See Livesay*, 611 S.W.2d at 584. Most of the property listed on the Items Schedule was in Plaintiff's possession because it was in the marital home both before and after Mr. Darken's death. As for the gold coins, they were stored in a safety deposit box owned jointly by Plaintiff and the decedent, they were bequeathed to Defendant under the 2004 codicil, and Plaintiffs have not alleged that the codicil was procured by any fraudulent or wrongful conduct.

Based on the foregoing, the trial court correctly concluded that Defendant is the rightful owner of the property listed in the Items Schedule.[8]

### III. CROSS-EXAMINATION OF DEFENDANT

Plaintiffs contend the trial court erred in denying them the opportunity "to fully cross-examine Defendant."

Trial courts may only call non-expert witnesses in "extraordinary circumstances . . . ." *See* Tenn. R. Evid. 614(a). When a court does so, "all parties are entitled to cross-examine witnesses thus called." *See id.* "Lawyers and judges regard cross-examination as an essential safeguard of the accuracy and completeness of testimony." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999) (citing 1 McCormick on Evidence § 19, at 78 (John W. Strong ed., 4th Practitioner's ed. 1992)). Cross-examination allows the trier of fact to assess a witness's demeanor, credibility, and ability to recall past events. *See id.* Thus, lawyers should be given wide latitude in cross-examining witnesses. *Id.* Accordingly, Tennessee has long recognized the "English rule," which permits the scope of cross-examination to exceed the scope of the witness's direct examination. *Id.* at 709; *see* Tenn. R. Evid. 611(b).

Nevertheless, cross-examination is subject to reasonable limitations to prevent obstruction of the orderly progress of a trial. *See Overstreet*, 4 S.W.3d at 702; *State v. Zirkle*, 910 S.W.2d 874, 890 (Tenn. Crim. App. 1995) ("While the right of cross-examination is fundamental, its exercise is controlled by the discretionary authority of the trial judge."). For example, the trial court may use its discretion to prevent lawyer misconduct, *see* Tenn. R. Evid. 611(a), to avoid unfair prejudice, confusion, or waste of time, *see* Tenn. R. Evid. 403, and to ensure compliance with other applicable rules of evidence and procedure. *Overstreet*, 4 S.W.3d at 709-10.

---

[8] Plaintiffs have also argued that the antenuptial agreement is a contract that barred Mr. Darken from leaving any property on the Items Schedule to Defendant. Although antenuptial agreements are contracts, the antenuptial agreement in this case expressly preserved Mr. Darken's right to give his property to Defendant. Thus, leaving Defendant the property listed in the Items Schedule is entirely consistent with the language of the antenuptial agreement.

Decisions to limit the scope of cross-examination and decisions about the admissibility of evidence are within the sound discretion of the trial court. *See id.* at 708-09; *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion. *Mercer*, 134 S.W.3d at 131. When an appellate court reviews a trial court's discretionary decision, it should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision. *Overstreet*, 4 S.W.3d at 709. Moreover, the appellate court should permit a trial court's discretionary decision to stand if reasonable judicial minds can differ concerning its propriety. *Id.*

Additionally, a trial court's decision regarding the exclusion of evidence, even if erroneous, will not be the basis for reversal unless it affected a substantial right of a party and "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b); *see* Tenn. R. Evid. 103(a). Thus, when evidence is excluded, the party challenging the exclusion of that evidence must make an offer of proof. Tenn. R. Evid. 103(a); *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 285-86 (Tenn. Ct. App. 2012). An offer of proof should contain the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence. *Singh*, 390 S.W.3d at 286 (quoting *Thompson v. City of LaVergne*, No. M2003-02924-COA-R3-CV, 2005 WL 3076887, at *9 (Tenn. Ct. App. Nov. 16, 2005)); *see* Tenn. R. Evid. 103(a)(2). This requirement may be satisfied by presenting the testimony, by stipulating as to the content of the excluded evidence, or by presenting an oral or written summary of the excluded evidence. *Singh*, 390 S.W.3d at 286.

Here, Plaintiffs did not object to the trial court's decision to call Defendant as a witness. Instead, they contend that the trial court erroneously limited the scope of cross-examination when Defendant testified in January 2015. Based on the circumstances of this case, we cannot say that the trial court was unreasonable when it limited the scope of cross-examination to the scope of direct examination. During their case-in-chief, Plaintiffs had the opportunity to call Defendant to testify and to ask her questions about any relevant topic. They declined to do so and, therefore, accepted some risk that they would not be able to question Defendant at all if she decided not to testify on her own behalf. When the trial court questioned Defendant, it asked her questions about only a few topics, and both parties were afforded the opportunity to cross-examine Defendant on the issues the trial court raised during its direct examination.

Further and more importantly, Plaintiffs have not shown that the decision to limit cross-examination, even if erroneous, constituted reversible error because the record does not contain an offer of proof of any kind. Offers of proof create the record necessary for this court to review a trial court's decision to exclude evidence. *See Taylor v. State*, 443 S.W.3d 80, 84 (Tenn. 2014). Without an offer of proof, we cannot conclude that the

decision to limit cross-examination prejudiced Plaintiffs. *See State v. White*, No. W2003-02558-CCA-R3-CD, 2005 WL 729167, at *4 (Tenn. Crim. App. Mar. 30, 2005) (holding that the decision to limit cross-examination was harmless error in light of the failure to present an offer of proof).

Based on the foregoing, the decision to limit the scope of cross-examination is not a basis for reversal in this case.

## IV. ATTORNEY'S FEES

Plaintiffs contend the trial court erred in ordering the estate to pay the legal fees incurred by the executrix on behalf of the estate, meaning the fees charged by Randle Davis as distinguished from the fees of attorney Yost Novak, who represented Defendant in her individual capacity.

The general rule applicable to this issue is stated succinctly as follows:

> Executors have the authority to retain counsel to assist them in administering an estate. When they retain counsel, they are personally liable for the fees until a court determines that the services were required and that the fee was reasonable. If a court approves the fee, the executor may charge it back against the estate as one of the costs of administration under Tenn. Code Ann. § 30-2-606. *State ex rel. Dahlberg v. American Sur. Co.*, 173 Tenn. 505, 508-09, 121 S.W.2d 546, 547 (1938); *Perlberg v. Jahn*, 773 S.W.2d at 926-27).
>
> In order for attorney's fees to be allowed as an administrative expense, they must be shown to be required, *see Vaccaro v. Cicalla*, 89 Tenn. 63, 78, 14 S.W. 43, 46-47 (1890), and the services provided must inure to the benefit of the entire estate, *McAdoo v. Dickson*, 175 Tenn. at 602, 136 S.W.2d at 519, as opposed to one or more of the interested parties. *Gilpin v. Burrage*, 188 Tenn. 80, 89, 216 S.W.2d 732, 736 (1948). Thus, in order to use estate funds to pay for the legal fees in this case, we must examine the record to determine whether the services were required and were for the estate's benefit and whether the amount of the requested fee is reasonable.

*In re Estate of Wallace*, 829 S.W.2d 696, 703 (Tenn. Ct. App. 1992).

Plaintiffs insist "the trial court misapplied the rationale of *Wallace* and the trial court erred in awarding fees without addressing the conduct of the executrix, which conduct was the direct cause of the need to bring this litigation to begin with." According to their brief: "In the *Estate of Wallace,* it was stated that 'where an executor

is partially to blame for bringing about unnecessary litigation, the executor rather than the estate should be responsible for its' legal expenses.' 829 SW 2d at 704."

We find no merit to Plaintiffs' argument. While the above quotation is accurate, it does not represent the broader reasoning in *Wallace*. Plaintiffs have focused on one sentence from this decision and contend that it alone resolves the issue of attorney's fees in this case. However, *Wallace* provides a more thorough statement of the relevant legal principles, which includes two specific principles of law that are more relevant to the facts at issue here. The more complete statement of the relevant principles of law in *Wallace* reads:

> An estate should not be charged with an executor's legal expenses if the executor's conduct is at the root of the litigation. Thus, when an executor is charged with breach of its fiduciary duties or when its accounting is challenged, it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate.
>
> If the executor successfully defends its conduct, its legal expenses may be charged against the estate. If, however, the account is defective, then the estate should not be charged. If the executor does not prevail completely, or where it is partially to blame for bringing about unnecessary litigation, the executor rather than the estate should be responsible for its legal expenses.

*Id.* at 704 (internal citations omitted).

Here, Plaintiffs claimed Defendant breached her fiduciary duties as the executrix, but she successfully defended these claims for the trial court found "no breach of fiduciary duty." Moreover, the trial court also found Plaintiffs' allegations were "meritless."

As *Wallace* instructs, "it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate," and executors' legal expenses may be charged against the estate if executors successfully defend their conduct. *Id.* Because Defendant successfully defended her conduct as the executrix of the estate, the legal expenses she incurred as the executrix may be charged against the estate. *Id.* Thus, the trial court correctly identified and properly applied the relevant legal principles in ruling that the fees charged by Randle Davis, the attorney who represented Defendant in her capacity as the executrix of the estate, are to be paid by the estate. Accordingly, we affirm the decision to charge Mr. Davis' fees and expenses to the estate.

**IN CONCLUSION**

The judgment of the trial court is affirmed. Costs of appeal are assessed against Eric and Brett Darken.


_____
FRANK G. CLEMENT, JR., JUDGE